21CA0323 Peo in Interest of CC 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0323 Weld County District Court No. 19JV803 Honorable W. Troy Hause, Judge The People of the State of Colorado, Appellee, In the Interest of C.C., a Child, and Concerning C.C., Appellant. JUDGMENT AFFIRMED Division A Opinion by JUDGE TAUBMAN* Bernard, C.J., and Vogt*, J., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Bruce T. Baker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee Jenna L. Mazzucca, Guardian Ad Litem Patrick R. Henson, Office of Respondent Parents’ Counsel, Andrew Gargano, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021. 
1 ¶ 1 In this dependency and neglect proceeding, C.C. (father) appeals the juvenile court’s judgment terminating his parent-child legal relationship to C.C. (child). We affirm. I. Background ¶ 2 In September 2019, the Weld County Department of Human Services (Department) received a report that the child had tested positive for methamphetamine at birth. At the initial hearing, the caseworker, qualified as an expert in child protection, testified that the child was experiencing withdrawal symptoms from the drug. Mother and father admitted using methamphetamine. The juvenile court granted the Department temporary custody of the child, and the Department placed him with kinship placement providers (kinship providers). ¶ 3 The Department then filed a petition in dependency and neglect alleging, among other things, that the child’s environment was injurious to his welfare. Mother admitted the allegations in the petition; father neither admitted nor denied the petition, remaining silent to protect his rights in several ongoing criminal matters. The juvenile court adjudicated the child dependent and neglected by them. The juvenile court adopted treatment plans for both parents. 
2 ¶ 4 Father’s treatment plan required him to (1) cooperate with case professionals; (2) complete a substance abuse evaluation and follow any treatment recommendations; (3) comply with urinalysis testing; (4) participate in parenting time; (5) complete a mental health evaluation and follow any treatment recommendations; (6) obtain and maintain housing appropriate for himself and the child; (7) secure legal income; and (8) cooperate with any current and ongoing criminal cases. ¶ 5 Later, alleging that father had not complied with his treatment plan and that it was unsuccessful, the Department moved to terminate his parental rights. After a hearing, the juvenile court granted the motion. II. Legal Framework ¶ 6 Under 19-3-604(1)(c), C.R.S. 2021, the juvenile court may terminate parental rights if it finds by clear and convincing evidence that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan was unsuccessful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change within a reasonable time. 
3 III. Reasonable Efforts ¶ 7 Father contends that the juvenile court erred when it determined that the Department made reasonable efforts. We do not agree. A. Standard of Review ¶ 8 The Department and guardian ad litem urge us to employ a clear error standard of review. We decline to do so. The supreme court has directed us that resolution of an issue necessitating application of the termination statute to evidentiary facts presents a mixed question of fact and law. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15, 480 P.3d 682, 686. ¶ 9 We review the juvenile court’s factual findings for clear error. C.R.C.P. 52. The credibility of witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn therefrom are all within the province of the juvenile court. People in Interest of C.A.K., 652 P.2d 603, 613 (Colo. 1982). However, a determination of the proper legal standard to be applied in a case and the application of that standard to the facts of the care are questions of law that we review de novo. M.A.W. v. 
4 People in Interest of A.L.W., 2020 CO 11, ¶ 31, 456 P.3d 1284, 1290. B. Relevant Law ¶ 10 When determining parental unfitness, the juvenile court must consider whether the Department made reasonable efforts to rehabilitate the parent and reunify the family. § 19-3-604(2)(h). “Reasonable efforts” means “the exercise of diligence and care” for a child who is in out-of-home placement. § 19-1-103(89), C.R.S. 2021; see also People in Interest of A.A., 2020 COA 154, ¶ 5, 479 P.3d 57, 60. The reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208, C.R.S. 2021. § 19-3-103(89). ¶ 11 In determining whether the Department made reasonable efforts, we do not look to the Department’s promulgated rules and regulations, as father would have us do. Instead, we look to see whether the juvenile court considered whether “(1) the services provided were appropriate to support the parent’s treatment plan but (2) they were unsuccessful in accomplishing the treatment plan’s purpose of rendering [the parent] fit.” People in Interest of S.N-V., 300 P.3d 911, 915 (Colo. App. 2011). 
5 ¶ 12 The parent is responsible for using the services provided by the Department to obtain the assistance needed to comply with the treatment plan’s requirements, People in Interest of J.C.R., 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent’s unwillingness to participate in treatment as a factor in determining whether the Department has made reasonable efforts, see People in Interest of A.V., 2012 COA 210, ¶ 12, 297 P.3d 1019, 1022. C. Analysis ¶ 13 The juvenile court, similar to the division in J.C.R., 259 P.3d at 1285, concluded that, although the Department made reasonable efforts to rehabilitate him, father did not make an effort to “maintain contact with the [c]hild” and did not “develop[] a bond with the [c]hild.” The record evidence supports these determinations. 1. Communication Between Father and the Department ¶ 14 Father asserts that the Department failed to maintain contact with him while he was incarcerated, and thereby did not provide reasonable efforts. We are not convinced. 
6 ¶ 15 Despite father’s contrary assertions on appeal, the caseworker testified that she “had ongoing communication every month” with father. Father testified that he was visited in jail at least twice by caseworkers. He also stated that he regularly received mail from the Department while he was incarcerated. During his period of release, although father testified that he made “quite a few attempts” to reach the caseworker, she stated that father’s contact with her consisted only of reaching out “once or twice.” Further, the caseworker testified that father stopped almost all communication in August 2020. She had not been contacted by father since his reincarceration. Significantly, the juvenile court concluded that it found the caseworker’s testimony to be credible. See C.A.K., 652 P.2d at 613. 2. Starting and Restarting Visitation ¶ 16 Father next asserts that the Department “failed to provide . . . visitation services while he was incarcerated despite his request for visitation services.” Similarly, father asserts that the Department failed to timely schedule a noncompliance meeting to restart father’s visitation with the child. While the record contains 
7 conflicting testimony regarding father’s assertions, the trial court properly relied on the caseworker’s testimony it found credible. ¶ 17 Section 19-3-208(2)(b)(IV) requires the Department to provide visitation services between a parent and child, as determined appropriate and necessary by an individual case plan. The child’s health and safety are the paramount concerns in determining whether visitation services are necessary and appropriate. A.A., ¶ 17, 479 P.3d at 62. ¶ 18 The record shows that father chose not to participate in his treatment plan’s visitation requirement. See A.V., ¶ 12, 297 P.3d at 1022 (a court may consider a parent’s unwillingness to participate in treatment as a factor in determining whether the Department has made reasonable efforts). Father became incarcerated days after the case opened, on the very date of his first scheduled in-person visit with the child. He remained incarcerated until March 2020. The caseworker testified that no in-person visits could be provided at the jail, and phone or video visits through the jail were not appropriate at that time because the child was still a newborn. ¶ 19 When father was released, at the beginning of the COVID-19 pandemic, the Department reasonably determined it could only 
8 offer video visitation with the child to prevent virus transmission. See People in Interest of D.G., 140 P.3d 299, 306-07 (Colo. App. 2006) (absent safety concerns, a parent is entitled to face-to-face visitation). Initially, father rejected video visits; he preferred to wait until he could have in-person visits. However, in late May or June of 2020, father requested video visitation with the child. The caseworker submitted a referral for in-person visits and began video visits in the meantime. ¶ 20 Despite his access to video visitation, father attended only five video visits from March until September 2020. After father cancelled two visits in a row in June 2020, he was subsequently discharged from the visitation program until he could attend a noncompliance meeting with the caseworker to discuss any barriers to his participation. The caseworker testified that she told father that it was his responsibility to set up a noncompliance meeting. She also testified that, during this time, father “contacted [her], but he didn’t respond in regards to visitation; never . . . expressed wanting to set up our [noncompliance] meeting.” She stated that it was not until “late . . . August that he actually confirmed wanting to set up a meeting . . . .” 
9 ¶ 21 After the meeting, father failed to attend his September 2020 in-person visit and was again discharged for noncompliance. The caseworker testified that father told her that he skipped the September in-person visit because “he was just not in a good place . . . in his life. . . . [H]e did not feel that it was a good time for him to have visits with [the child].” Father was reincarcerated in November 2020 and remained in jail until the termination hearing. 3. Technical Issues ¶ 22 Father asserts that the Department “failed to assist” him with “the technical issues that arose during virtual visitations.” However, the record indicates that father did not timely inform the caseworker of his technical issues, and, indeed, resolved them himself. At father’s noncompliance meeting, in August 2020, father stated for the first time that his phone was not working, preventing him from attending video visits. He also stated, however, that he had purchased a tablet and “it should no longer be an issue.” 4. Visitation and Kinship Providers’ Order of Protection Against Father ¶ 23 Last, father asserts that the Department “failed [to] make any accommodations for the [kinship providers’] protective order against 
10 [him] that prevented him from attending visits.” Again, the record clearly contradicts this assertion. ¶ 24 The mandatory protection order father signed at the beginning of the case prevented him from contacting mother. Father testified that he thought it also prevented him from contacting the kinship provider and therefore unfairly limited his contact with the child. However, father also testified that it was his attorney — and not a court order — who advised him not to have contact with the kinship provider, who was a prosecution witness. Ultimately, father confirmed that the Department “ensured he would have no contact with [the kinship provider]” during visits. ¶ 25 Given this record, we will not disturb the juvenile court’s determination that the Department made reasonable efforts to rehabilitate father. IV. Fitness in a Reasonable Time ¶ 26 Father also contends that the juvenile court erred when it determined that he was unfit and unlikely to become fit in a reasonable time. Specifically, father asserts that he “substantially complied with all components of his treatment plan.” We disagree. 
11 ¶ 27 As a threshold matter, we are not convinced by the Department’s assertion that father failed to preserve this claim. Father’s counsel’s argument that father substantially complied with the treatment plan, as well as his assertion that father could provide the child with “minimally adequate parent[ing] upon his release from jail,” preserved father’s fitness contention for appeal. ¶ 28 The court found that “we are not in a place where we could find that there’s any likelihood within a reasonable time that [father] is going to be able to be the minimal, adequate parent that [the child] deserves.” The record supports this finding. ¶ 29 The juvenile court erroneously found, contrary to record evidence, that father did not sign a release allowing the caseworker to access his completed integrated evaluation. The record suggests that the caseworker had obtained a valid release and spoke with the therapist about father’s engagement in treatment. This error, however, is harmless; record evidence otherwise supports the juvenile court’s conclusion that father had not complied with his treatment plan and remained unfit. For example, father’s therapist reported to the caseworker that father stopped participating in treatment in October 2020, around the same time that father 
12 testified he had had a breakdown. Similarly, as outlined above, father had not been in contact with the Department or engaged in parenting time in many months. Although he had “resolved his pending criminal matters,” at the time of the termination hearing he had not yet been sentenced. He testified that it was likely that, on his release, he would likely have to “comply with substance abuse classes . . . drug and alcohol classes and all that other stuff,” and he would likely have “court supervision for . . . the next four years.” ¶ 30 Thus, even though father had signed a release, there is no record evidence that the child’s best interest would be served by delaying his permanency. In fact, the caseworker testified that the child had no relationship with his father and needed “stability and permanency” through adoption. ¶ 31 Given this record evidence, we perceive no error in the juvenile court’s determination that father could not become fit within a reasonable time. V. Conclusion ¶ 32 We affirm the judgment. CHIEF JUDGE BERNARD and JUDGE VOGT concur.