24CA1015 Peo in Interest of EAL 12-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1015
City and County of Denver Juvenile Court No. 21JV976
Honorable Elizabeth Strobel, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.A.L., a Child,

and Concerning R.H.K.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GOMEZ
Dunn and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

---

Kerry C. Tipper, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Elizabeth A. McClintok, Office of Respondent Parents' Counsel, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    R.H.K. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with E.A.L. (the child). We affirm.

## I.    Relevant Facts

¶ 2    At the time of the child's birth in November 2021, both the child and the child's mother tested positive for controlled substances.

¶ 3    Three days later, the Denver Department of Human Services filed a petition in dependency and neglect regarding the child. The juvenile court granted temporary legal custody to the Department, and the child was placed in foster care.

¶ 4    In July 2022, the juvenile court adjudicated the child dependent and neglected. The following month, the court adopted a treatment plan for father. The plan required father to, among other things, (1) comply with the terms and conditions of his probation; (2) refrain from conduct that would result in his incarceration; (3) complete a substance abuse evaluation and follow the evaluator's recommendations; (4) submit to drug screenings as requested; (5) consistently engage in parenting time with the child; and (6) secure stable and substance-free housing.

¶ 5     In September 2023, the Department moved to terminate father's parental rights.

¶ 6     In May 2024, following an evidentiary hearing, the juvenile court entered a judgment terminating father's parental rights.  In doing so, the court made the following findings:

- The child was adjudicated dependent and neglected.

- Father didn't reasonably comply with his treatment plan.

- Father never addressed an outstanding warrant in a criminal case.  Thus, he failed to "ensure that incarceration [would] not take him away from his child."

- The Department made repeated referrals for a substance abuse evaluation, but father was unresponsive.  And despite over sixty requests for urinalysis screenings, he failed to produce a single sample, raising concerns about his commitment to sobriety.

- The Department tried to assist father with his housing needs.  For example, the Department acted reasonably by requesting verifying documents, such as a lease agreement, before providing him with a loan or cash for an apartment, "especially [when] [he] appear[ed] . . . to

have significant substance abuse issues." *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1 (a district court's oral findings supplement its written order). He didn't provide the necessary documentation or follow up with the Department. And the Department's policy of providing emergency hotel vouchers only to parents with a child currently in their care was a reasonable approach to allocating its limited resources.

- Father didn't successfully form a relationship with the child. He was granted supervised parenting time twice a week after his release from incarceration in March 2022. However, he only attended two visits and was later dismissed from the program. He then had one visit supervised by the foster family. More referrals were made, but he didn't attend orientation sessions, missed scheduled check-ins, and never had another visit.

- The Department made reasonable efforts to rehabilitate father as a parent.

- Father was an unfit parent due to his lack of progress on his treatment plan and concerns about his ongoing substance abuse.

- Although father had thirty months to address his issues and demonstrate his ability to be a fit and appropriate parent, he did not. Therefore, his conduct or condition will unlikely change within a reasonable time. And the child needed permanency already.

- Termination of father's parental rights was the only viable option to ensure the child's best interests, as there were no less drastic alternatives.

## II. Termination of Parental Rights

### A. Legal Framework and Standard of Review

¶ 7    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-

604(1)(c), C.R.S. 2024; *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 9.

¶ 8    Whether a juvenile court properly terminated parental rights, including whether the Department made reasonable efforts, presents a mixed question of fact and law, *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8, because it involves application of the termination statute to evidentiary facts, *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

¶ 9    We won't disturb the juvenile court's factual findings if the evidence in the record supports them. *S.Z.S.*, ¶ 10. The credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence and the inferences and conclusions to be drawn from it, are all matters within the court's province. *Id.*

## B.    Discussion

¶ 10    Father contends that the juvenile court's termination judgment cannot stand because the Department didn't make reasonable efforts to rehabilitate him and reunify him with the child. Specifically, he argues that the Department's failure to give him emergency hotel vouchers to address his lack of housing

prevented him from entering a sober living house and engaging in treatment. We disagree.

¶ 11 Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-1-103(114), 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" for a child in out-of-home placement, and the reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208, C.R.S. 2024. *See S.Z.S.*, ¶ 13; § 19-1-103(114).

¶ 12 The juvenile court should analyze whether the services provided were appropriate to support the parent's treatment plan by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan." *People in Interest of My. K.M. v. V.K.L.*, 2022 CO 35, ¶ 33; *see also People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). The parent then is responsible for using those services to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in

treatment when determining whether the department made reasonable efforts. *People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 13 Father suggests that section 19-3-208 required the Department to provide him with housing to meet its reasonable efforts obligation. But nothing in section 19-3-208 expressly requires the Department to provide housing to parents in dependency and neglect cases. Rather, at most, section 19-3-208(2)(b)(III) mandates that the Department provide "[i]nformation and referral services to available public and private assistance resources," "as determined necessary and appropriate by individual case plans." Because the record shows that the Department did so, we discern no error.

¶ 14 The caseworker testified that while father's homelessness was a barrier to him complying with the treatment plan's objectives, the Department provided him with resources that he failed to utilize. The caseworker recalled that at one point the Department denied father's request for an emergency hotel voucher because the child wasn't in his care. A few months later, the Department denied another request for a hotel voucher for the same reason. The Department then provided father with contact information for

several sober living facilities, but he never pursued those options. At another point, father requested a "hardship loan" for an apartment. The caseworker informed him that the Department didn't provide such loans but offered to assist him with a security deposit. Yet father failed to follow up with that offer. The caseworker also sent father resources for housing, but again father didn't respond or follow up.

¶ 15 We conclude that the Department satisfied its obligation to make reasonable efforts to rehabilitate father and reunify him with the child. *See J.C.R.*, 259 P.3d at 1285 (juvenile court didn't err where the evidence showed that the department provided the parent with information that the parent could've used to find housing). Accordingly, we won't disturb the juvenile court's termination judgment. *See S.Z.S.*, ¶ 10.

### III. Disposition

¶ 16 The judgment is affirmed.

JUDGE DUNN and JUDGE BERNARD concur.