¶ 43 In *People v. Fox,* 928 P.2d 820 (Colo. App.1996), a division of this court found sufficient evidence to support a robbery conviction where the defendant shoved a man who was trying to recover his wife's purse from the defendant's wife, who took the purse from another woman's shopping cart inside a store. *Id.* at 821. The issue was whether force was applied in taking the purse, because the shoving occurred in a parking lot after the purse was taken. *Id.* In reaching its conclusion, the division recognized that it was undisputed that "the husband and the wife were both rightful owners of the property taken." *Id.* The division went on to explain: "[A]t the moment that defendant shoved the husband, he was utilizing force against a person who had a right to exercise control over an item of property that was still within his sight and which would have been within his control if not for defendant's use of force." *Id.*

 2012 COA 210

**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**In the Interest of A.V. and J.V., Children, and Concerning M.V., Respondent–Appellant.**

**No. 12CA0829.**

Colorado Court of Appeals, Div. VII.

Nov. 21, 2012.

Bruce T. Barker, County Attorney, Thomas J. Joaquin, Assistant County Attorney, Greeley, Colorado, for Petitioner–Appellee.

Debra W. Dodd, Guardian Ad Litem.

Law Office of Linda Goff, LLC, Linda L. Goff, Greeley, Colorado, for Respondent–Appellant.

Opinion by Judge ROMÁN.

¶ 1 M.V. (father) appeals the trial court's judgment terminating the parent-child legal relationship between him and his children, A.V. and J.V. We affirm.

## I. Background

¶ 2 In February 2009, the Weld County Department of Human Services (Department) filed a petition in dependency and neglect regarding A.V., a two-year-old, J.V., a one-year-old, and an older half-sibling. The petition noted numerous concerns regarding the children's mother and alleged that the caseworker was unable to reach father, who reportedly used methamphetamines.

¶ 3 The court adjudicated the children dependent and neglected and adopted a treatment plan that required father to (1) cooperate with the Department; (2) maintain a sober and drug-free lifestyle; (3) maintain a safe and stable environment for the children; (4) meet the children's needs; (5) maintain a safe and nurturing relationship with the children, including attending parenting time; and (6) comply with all requirements of his criminal case, including probation. However, the court subsequently suspended father's visits until he demonstrated thirty consecutive days of sobriety.

¶ 4 In May 2010, the Cherokee Nation intervened in the matter after the children were enrolled in the tribe. The Cherokee Nation had determined that the children were eligible for membership in May 2009, but there was a delay in their enrollment.

In December 2011, the Department filed a motion to terminate the parent-child legal relationship between father and the children. Following a contested hearing in February 2012, the court granted the Department's motion and entered judgment terminating father's parental rights.

¶ 5 Father appeals.

## II. Active Efforts Requirement

¶ 6 Father contends that the Department and the court failed to make active efforts to prevent the breakup of the Indian family as required by the Indian Child Welfare Act (ICWA) because (1) he was prevented from visiting the children once he was in community corrections in March 2011; and (2) no efforts were made to reunite him with the children between August 2010 and the termination hearing. We are not persuaded.

¶ 7 When, as here, the court determines that the children are Indian children, it must apply the standards set forth in the ICWA. Under the ICWA, any party seeking to effectuate foster care placement of or terminate parental rights to an Indian child must satisfy the court that (1) active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and (2) these efforts have been unsuccessful. 25 U.S.C. § 1912(d) (2006).

¶ 8 As an initial matter, father contends that the court was required to make active efforts findings by "clear and convincing evidence." We need not resolve this question. Divisions of this court have disagreed on which standard of proof to applies to 25 U.S.C. § 1912(d). *Compare People in Interest of R.L.*, 961 P.2d 606, 609 (Colo.App.1998) ("Because findings pursuant to 25 U.S.C. §§ 1912(d) and 1912(f) (1978) are predicates to termination under the ICWA, we conclude that logic compels application of the same 'beyond a reasonable doubt' standard of

proof as to both statutory provisions."), *with People in Interest of C.Z.*, 262 P.3d 895, 905 (Colo.App.2010) (applying "the same clear and convincing evidence standard to the active efforts requirements that we apply to the reasonable efforts requirement in non-ICWA cases").

¶ 9 Because the trial court found that the department had met its burden of proof under the higher beyond a reasonable doubt standard, and we agree that the evidence was sufficient to support that finding, we need not decide whether to employ the clear and convincing standard or the beyond a reasonable doubt standard to findings made pursuant to 25 U.S.C. § 1912(d).

¶ 10 We turn next to what constitutes "active efforts" under ICWA. ICWA does not define "active efforts" and divisions of this court disagree as to whether it is more demanding than the non-ICWA "reasonable efforts" standard. One division of this court has held that " '[a]ctive efforts' are equivalent to reasonable efforts to provide or offer a treatment plan in a non-ICWA case." *People in Interest of K.D.*, 155 P.3d 634, 637 (Colo.App.2007).

¶ 11 Another division of this court expressly disagreed with *K.D.*,[1] referring to (1) basic statutory interpretation and the plain and ordinary meaning of the word "active"; (2) legislative intent for ICWA to have nationwide application; and (3) the purpose and policy of ICWA to promote the best interests of Indian children. *People in Interest of A.R.*, 2012 COA 195, ¶ ——, —— P.3d ——, 2012 WL 5457416 (Colo.App.2012). We agree with the division in *A.R.* that ICWA's "active efforts" standard requires more than "reasonable efforts." *See In re Interest of Walter W.*, 274 Neb. 859, 865, 744 N.W.2d 55, 61 (2008) (active efforts standard requires more than reasonable efforts applicable in non-ICWA cases, and at least some of the efforts should be culturally relevant).

¶ 12 Nonetheless, active efforts under the ICWA does not mean persisting with futile efforts. *K.D.*, 155 P.3d at 637. Thus, the Department is not required to provide active efforts to a parent who voluntarily absents himself or herself from a proceeding and cannot be located. *People in Interest of J.S.B.*, 691 N.W.2d 611, 620 (S.D.2005). The court may also consider a parent's unwillingness to participate in treatment as a factor in determining whether the Department made active efforts. *Pravat P. v. State*, 249 P.3d 264, 271 (Alaska 2011).

¶ 13 "Whether the department made adequate active efforts is a mixed question of fact and law. We review the trial court's factual findings for an abuse of discretion, and the legal issues de novo." *C.Z.*, 262 P.3d at 905.

¶ 14 Here, the trial court found, by evidence beyond a reasonable doubt, that the Department made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, including conducting multiple relative home studies, but these efforts were unsuccessful. We conclude the record supports this finding.

¶ 15 Evidence adduced at the termination hearing established that following the adoption of the treatment plan, the Department provided services to father, including a substance abuse evaluation, two substance abuse treatment programs (paid for by the Department), monitored sobriety services, supervised visits, and a parenting education program. Moreover, the caseworker made numerous attempts, with limited success, to contact father and discuss his progress on the treatment plan, and maintained contact with father's probation officer and substance abuse treatment provider to monitor his progress.

¶ 16 Moreover, father was twice "discharged non-compliant" from his intensive outpatient substance abuse treatment because he was absent from classes, missed monitored sobriety, and provided positive urinalyses for methamphetamines and marijuana. Additionally, father only inconsistently attended visits until his visits were suspended, and thereafter did not provide thirty days of clean urinalyses to allow his visits to resume. Father also did not complete the parenting education program.

---

1. One division is not bound by the holding of another division. *See City of Steamboat Springs v. Johnson*, 252 P.3d 1142, 1147 (Colo.App. 2010).

¶ 17 Evidence clearly established that following the June 2010 court hearing, the caseworker was unaware of father's whereabouts until he was arrested in February 2011. Father similarly conceded that he was unavailable when he went "on the run" to avoid difficulties in Colorado. Because father's whereabouts were unknown, the Department was not required to provide active efforts to father during this time. *See J.S.B.*, 691 N.W.2d at 620.

¶ 18 Although father began serving a three-year sentence to community corrections in May 2011, the caseworker testified that she maintained contact with father's community corrections case manager to ensure that father could resume visitation once he provided thirty days of clean urinalyses. Additionally, father testified that he received drug and alcohol treatment through community corrections. The caseworker testified that despite this coordination, father had not provided the requisite urinalyses, and thus was unable to visit the children.

¶ 19 The record further evidences that between August 2009 and November 2011, the Department completed four home studies concerning paternal grandmother's home, which were all deemed unsuitable for placement. The Department also initiated home studies regarding a paternal great-aunt in Tennessee and a paternal uncle in Nebraska, which were both denied.

¶ 20 In addition, the Cherokee Nation caseworker opined that active efforts were provided to the extent possible, but those efforts were unsuccessful in preventing the breakup of the Indian family.

¶ 21 Under these circumstances, we conclude that the Department made adequate active efforts to prevent the breakup of the Indian family, despite a lack of visitation and the provision of fewer services after March 2011. *See C.Z.*, 262 P.3d at 905 (concluding that the Department's failure to provide additional services after a parent relocated did not constitute a lack of active efforts when the parent had not participated in services offered prior to relocation).

### III. Sufficiency of Prior Active Efforts Findings

¶ 22 Father further contends that the trial court violated his due process rights by failing to take the sworn testimony of any expert witnesses and by not applying the "clear and convincing" evidence standard when making active efforts findings at review hearings. We reject this contention.

¶ 23 ICWA does not require expert testimony to support a trial court's finding that active efforts were made to prevent breakup of an Indian family under section 1912(d).[2] *Yvonne L. v. Arizona Dep't. of Economic Sec.*, 227 Ariz. 415, 258 P.3d 233, 241 (App.2011); *In re K.B.*, 173 Cal.App.4th 1275, 93 Cal.Rptr.3d 751, 763 n. 12 (2009). Conversely, failure to provide expert testimony in section 1912(e) foster care placements[3] or section 1912(f) parental termination cases[4] can be grounds for mandatory reversal under § 1914. *See In re N.L.*, 754 P.2d 863, 868 (Okla.1988) (§ 1912(e) foster care placement reversed due to lack of expert testimony on potential harm to child); *People ex rel. M.H.*, 691 N.W.2d 622, 628 (S.D.2005) ("In the absence of qualified expert testimony supporting termination in the [§ 1912(f) ] proceeding below[,] the judgment of the trial court must be reversed. . . .").

¶ 24 When the language of a statute is clear and unambiguous, we must apply it as written. *In Interest of K.M.B.*, 80 P.3d 914, 916 (Colo.App.2003). Thus, because the plain language of 25 U.S.C. § 1912(d) does not

2. As discussed, 25 U.S.C. § 1912(d) requires that "[a]ny party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child . . . shall satisfy the court that active efforts have been made . . . designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."

3. Under 25 U.S.C. § 1912(e), "[n]o foster care placement may be ordered . . . in the absence of a determination, supported by . . . evidence, including testimony of qualified expert witnesses, that the continued custody of the child . . . is likely to result in serious emotional or physical damage to the child."

4. Under 25 U.S.C. § 1912(f), "[n]o termination of parental rights may be ordered . . . in the absence of a determination, supported by evidence . . . including testimony of qualified expert witnesses, that the continued custody of the child . . . is likely to result in serious emotional or physical damage to the child."

impose a requirement that expert testimony support a court's finding of active efforts designed to prevent the breakup of the Indian family, we will not impose such a requirement. *See K.M.B.*, 80 P.3d at 916.

¶ 25 Moreover, to the extent that any of the active efforts findings included in the prior placement and permanency hearing orders were insufficient, these findings were subsumed by the trial court's active efforts finding in its termination order, which we have affirmed. *See C.Z.*, 262 P.3d at 906 (the trial court's earlier reasonable efforts findings did not undermine the validity of its active efforts finding in its termination order).

¶ 26 Accordingly, we conclude that the trial court complied with the ICWA's requirements and disagree with father's contention that his due process rights were violated.

¶ 27 The judgment is affirmed.

Judge HAWTHORNE and Judge FURMAN concur.