24CA0549 Peo in Interest of ASC-W 10-17-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0549
City and County of Denver Juvenile Court No. 22JV30545
Honorable Elizabeth Joan McCarthy, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.S.C-W., a Child,

and Concerning L.W.C. and C.S.P.,

Appellants.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Navarro and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

---

Kerry Tipper, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant, L.W.C.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant, C.S.P.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    C.S.P. (mother) and L.W.C. (father) appeal the judgment terminating the parent-child legal relationships with their child, A.S.C-W.  We affirm.

## I.    Background

¶ 2    After the child tested positive for controlled substances at birth, the Denver Department of Human Services filed a petition in dependency and neglect.  The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for the parents that required them to (1) address their substance abuse and mental health issues and (2) provide for the child's needs.

¶ 3    The Department later moved to terminate the parents' parental rights.  A year and a half after the Department filed the petition and following a hearing, the juvenile court granted the motion.

## II.    Reasonable Efforts

¶ 4    The parents first assert that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate them and reunify them with the child.  We disagree.

### A.    Standard of Review and Preservation

¶ 5    Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and

law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

¶ 6 Because the parents didn't challenge the reasonableness of the Department's efforts before the termination hearing, the Department and guardian ad litem contend the issue is unpreserved. We needn't resolve the preservation dispute, however, because even if we assume the parents preserved this issue, the outcome is the same.

## B. Applicable Law

¶ 7 A department of human services must make reasonable efforts to rehabilitate parents and reunite families before a court may terminate parental rights. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 13; *see also* §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(1)(c), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" to reunify parents with their children. § 19-1-103(114).

¶ 8 Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). Among the

services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b)(1)-(VI). If funding is available, a department must also provide substance abuse treatment and mental health services. § 19-3-208(2)(d)(IV)-(V).

¶ 9 To determine whether a department has satisfied its reasonable efforts obligation, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent, however, is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining

whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

### C.    Analysis

¶ 10    The juvenile court found that the Department had made reasonable efforts to rehabilitate the parents and reunify them with the child.  Specifically, the court found that the Department made multiple referrals for services and family time and that the caseworker had "attempt[ed] to engage" the parents in their treatment plans, but the parents failed to take advantage of the offered services.  The court also found the parents didn't maintain communication with the caseworker, but had they done so, the caseworker "would have assisted them with getting into treatment or re-engaging with [family time]."

¶ 11    The record supports the juvenile court's findings.  The caseworker testified that, at the beginning of the case, mother was already enrolled in outpatient substance use treatment (from an earlier case), but she was eventually discharged for lack of participation.  The caseworker said that she had offered mother inpatient treatment, but mother never responded to her.  As for father, the caseworker testified that the Department had provided

4

him with a dual diagnosis evaluation, which recommended outpatient treatment, but father refused to select a provider and told the caseworker that he wanted to "find a place on his own." The record also shows that the Department provided the parents with multiple referrals for supervised family time services, but the parents either did not participate or the provider could not reach them and had to close out the referral. The caseworker further testified that the parents were offered life skills training, but mother attended just a few sessions and father never engaged. Finally, the caseworker said that she attempted to communicate with the parents monthly, but they were mostly nonresponsive.

¶ 12    Despite these efforts, mother contends the Department should have made additional referrals for family time and substance use treatment. But the caseworker detailed the significant efforts made with respect to family time referrals and attempts to reengage mother with substance use treatment after she was discharged from treatment. The caseworker also testified about mother's lack of response to attempts to reengage her and connect her with services. And mother doesn't explain why the Department had an obligation to continue to provide referrals when mother failed to either

communicate with the caseworker or engage in the provided services. Given mother's unwillingness to engage, the Department had no obligation to persist with futile efforts. *See id.*

¶ 13 To the extent mother summarily states that the Department didn't satisfy its reasonable efforts obligations because it didn't perform a relative search and "failed to allow" mother to attend unspecified appointments, she neither develops these statements nor provides legal authority to support them. Because these assertions aren't self-explanatory — and we see no basis for them in section 19-3-208(2)(b) — we are unable to consider these arguments further. *See, e.g.*, *People in Interest of M.B.*, 2020 COA 13, ¶ 64 (declining to consider undeveloped assertions).

¶ 14 We are equally unpersuaded by father's suggestion that the Department didn't provide reasonable services to address his depression and self-reported borderline personality disorder and

post-traumatic stress disorder.[1]  The record shows that the Department provided father with the services necessary to address his mental health issues, *see S.N-V.*, 300 P.3d at 915, but he declined to participate when he rejected the Department's providers and said he would get his own, *see A.V.*, ¶ 12.  And though father testified to his general distrust of women, the record shows that he still failed to engage with offered services after the Department provided him a male family time supervisor and life skills worker.

¶ 15     Given all this, we conclude that the Department provided the parents with the necessary resources for them to complete their treatment plans, but they did not take advantage of those resources to become fit parents in a reasonable time.

### III.   Less Drastic Alternative

¶ 16     Father contends that the juvenile court erred by finding that there was no less drastic alternative to termination of parental

---

[1] Because father doesn't claim that the Department should have made an accommodation under the Americans with Disabilities Act of 1990 (ADA) or that the ADA applied in this case, we don't consider the ADA here.  *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21 (declining to consider an unpreserved ADA claim because appellate courts "don't (and, indeed, can't) make findings of fact" (quoting *Carousel Farms Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 19)).

rights. He specifically asserts that the court could have given him more time to demonstrate compliance with the treatment plan.

¶ 17 The juvenile court must consider and eliminate less drastic alternatives before entering a judgment terminating the parent-child legal relationship under section 19-3-604(1)(c). *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 18 Because whether a parent is likely to become fit within a reasonable time is a criterion for the termination of parental rights, *see* § 19-3-604(1)(c)(III), we will assume, without deciding, that giving a parent more time to comply with a treatment plan may be a less drastic alternative. A reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶¶ 24-25. When a child is under six years old, as in this case, the juvenile court must also consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

¶ 19    Focusing on the child's physical, mental, and emotional needs, the juvenile court found that there were no less drastic alternatives to the termination of parental rights.  In so finding, the court observed that the child was young, needed permanency, and had no "meaningful relationship with the parents."  The court also rejected the request for additional time to engage in treatment, noting that "the case has been open for 553 days with a lack of compliance" and "there are no amendments to the treatment plan that would allow [the parents] to be successful within a reasonable amount of time."

¶ 20    The record supports these findings.  The caseworker testified that the Department offered father multiple referrals and services, but he refused to engage in services or communicate with the caseworker.  Father's condition remained unchanged.  Father had not visited the young child for many months and had no relationship with the child.  And the caseworker opined that the child needed permanency and that termination of parental rights was in the child's best interests.  Because the record supports the juvenile court's finding that no less drastic alternative to

termination existed, we must affirm that decision. *See People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## IV.    Disposition

¶ 21    The judgment is affirmed.

JUDGE NAVARRO and JUDGE TAUBMAN concur.