24CA0812 Peo in Interest of DEPH 11-27-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0812
Adams County District Court No. 22JV30042
Honorable Emily Lieberman, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.E.P.H., a Child,

and Concerning C.R.P.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

---

Heidi M. Miller, County Attorney, Conor Hagerty, Assistant County Attorney, Westminster, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     C.R.P.[1] appeals the juvenile court's judgment terminating their parent-child legal relationship with D.E.P.H. (the child).  We affirm.

## I.     Background

¶ 2     The Adams County Department of Human Services investigated reports that C.R.P. physically abused the then-five-year-old child, causing approximately twenty bruises on his arm and possible injury to his jaw.  C.R.P. attempted suicide and was hospitalized.  The court granted the Department temporary legal and physical custody of the child.  After the Department filed a petition in dependency and neglect, C.R.P. admitted the petition, and the court adopted a treatment plan for them.

¶ 3     The treatment plan required C.R.P. to (1) maintain contact with case professionals and sign releases of information; (2) engage in life skills services; (3) complete a mental health evaluation and follow through with any treatment recommendations; (4) engage in a domestic violence educational program; and (5) participate in family time with the child.

---

[1] C.R.P. is identified as the mother in the case documents but uses they/them pronouns in the opening brief, so we do too.

¶ 4    Approximately ten months after the court adopted the treatment plan, the Department moved to terminate C.R.P.'s parental rights.  About a month later, C.R.P. alleged the Department was not providing reasonable efforts contending that, because the Department was not providing appropriate transportation and had placed C.R.P. in a "high risk track" for supervised family time, it was not adequately supporting C.R.P.'s access to family time with the child.  The juvenile court disagreed and terminated C.R.P.'s parental rights.

## II.    Reasonable Efforts

¶ 5    C.R.P. contends that the juvenile court erred when it found that the Department made reasonable efforts.  Specifically, C.R.P. asserts that the Department failed to assist them with transportation and visitation.  We are not convinced.

### A.    Applicable Law and Standard of Review

¶ 6    As relevant here, before a juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the county department of human services must make reasonable efforts to rehabilitate parents and reunite families.  §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  "Reasonable

efforts" means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 7      Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).  But the parent is ultimately responsible for using the services to comply with the plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 8      Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation.  *Id.*

## B. Transportation Support

¶ 9 The caseworker, whom the court qualified as an expert in social work with an emphasis in child protection, testified concerning the many efforts she made to overcome C.R.P.'s transportation barriers to complying with the treatment plan. The juvenile court found, and the record supports, that C.R.P. often chose not to accept the support.

¶ 10 Initially, C.R.P. reported that they had a friend who could help with transportation, but that "fell through after a period of time." The Department also offered C.R.P. bus passes, but they never accessed them. Later, C.R.P. reported that they could not take the bus to family time due to their disabilities.

¶ 11 The Department then investigated a supervised parenting provider located closer to C.R.P.'s home, but that provider had a long waitlist. The caseworker spoke with C.R.P.'s attorney and social worker about getting them "set up with Access-A-Ride," but C.R.P. did not complete medical documentation necessary to initiate that service and did not follow up with the caseworker's offer to help with filling out that paperwork. The Department gave C.R.P. at least one gift card for a ride service to and from family time. After

trying to use the card, C.R.P. canceled their ride because it would not get them to the visit on time. Then, because C.R.P. would not confirm that they would use a gift card to get to family time, no further cards were provided. C.R.P. was also offered transportation through life skills services, but they did not indicate that they were willing to engage with life skills.

## C. Family Time Support

¶ 12 When the case opened, the Department referred C.R.P. to several supervised parenting time providers, but C.R.P. did not engage with family time. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) (the parent is ultimately responsible for using services to comply with the plan). C.R.P. was inconsistent with family time attendance, and behaved inappropriately when they did visit the child. For instance, C.R.P. vaped during family time, and once aggressively drove their car toward a family time facilitator.

¶ 13 C.R.P. was later restricted to a high-risk track for supervised family time at the Department, which included security due to C.R.P.'s "violent threats or behaviors that have been observed." The

high-risk track prevented C.R.P. from spending family time in a public place or with a provider closer to their home.

¶ 14　　The caseworker testified that she set up many meetings with other professionals to "work with [C.R.P.] on their family time to address any barriers and to support [C.R.P.] so they were able to see [the child] consistently." Specifically, the caseworker "had discussions with [C.R.P] and their attorney around what . . . the expectation was to drop down from the high-risk track." Based on agreements reached at the meetings, C.R.P. was removed from the high-risk family time track. Still, after the Department referred them to two different agencies, C.R.P. did not engage. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12 (a court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts).

¶ 15　　The court's findings are supported by the record, and we will not disturb them. Based on these findings we conclude the court's determination that the Department made reasonable efforts to provide C.R.P. with transportation assistance and to assist C.R.P. with visitation was not erroneous.

¶ 16    C.R.P. mentions other complaints about communication with the caseworker and treatment providers.  Because of our conclusion above, to the extent C.R.P. points to these complaints as separate claims of error, we need not address them.  And, in any event, the complaints are undeveloped.  *See Taylor v. Taylor*, 2016 COA 100, ¶ 13 (declining to address conclusory arguments unsupported by substantial argument).

### III.    Disposition

¶ 17    The judgment is affirmed.

JUDGE TOW and JUDGE SCHUTZ concur.