24CA1049 Peo in Interest of DAC 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1049
Jefferson County District Court No. 23JV30141
Honorable Lindsay VanGilder, Judge

The People of the State of Colorado,

Appellee,

In the Interest of D.A.C., a Child,

and Concerning D.C.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Jeffrey C. Koy, Lauren Dingboom, Jordan Oates, Guardians Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1 In this dependency and neglect proceeding, D.C. (mother) appeals the judgment terminating her parent-child legal relationship with D.A.C. (the child). We affirm.

## I. Background

¶ 2 In May 2023, the Jefferson County Division of Children, Youth, and Families (the Division) filed a petition in dependency and neglect regarding the then-newborn child and alleging concerns about mother's substance use. The Division alleged that the child's umbilical cord tested positive for methamphetamine and fentanyl and that mother admitted to daily fentanyl use. The juvenile court granted temporary legal custody to the Division, and the child was placed with her maternal aunts.

¶ 3 The juvenile court adjudicated the child dependent or neglected. The court adopted a treatment plan that required mother to, among other things, complete a substance abuse evaluation, attend substance abuse treatment, participate in random sobriety monitoring, attend supervised family time, and cooperate with the Division.

¶ 4    The Division later moved to terminate mother's parental rights. Approximately one year after the petition was filed, the juvenile court granted the termination motion following a contested hearing.

## II.    Reasonable Efforts

¶ 5    Mother contends that the juvenile court erred by determining that the Division made reasonable efforts to rehabilitate her and reunify her with the child.  We disagree.

### A.    Preservation

¶ 6    The Division contends that mother's reasonable efforts argument is unpreserved because she waited until the termination hearing to raise it.  Divisions of this court are split on whether a parent must challenge a department's reasonable efforts prior to the termination hearing to preserve the issue for appellate review. *Compare People in Interest of S.N-V.*, 300 P.3d 911, 916 (Colo. App. 2011) (holding that a parent's failure to object to services does not bar appellate review of a reasonable efforts finding), *with People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to object to services before the termination hearing).  However, we need not determine whether mother preserved her reasonable

efforts argument because even if we assume she did, we discern no basis for reversal.

### B. Applicable Law and Standard of Review

¶ 7 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 8 To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *S.N-V.*, 300 P.3d at 911. "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024. Services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 9    Under section 19-3-208, a department must provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b).  And, if funding is available, section 19-3-208 requires a department to provide services such as transportation; diagnostic and mental health services; and drug and alcohol services.  § 19-3-208(2)(d).

¶ 10    In determining whether a department made reasonable efforts, a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives.  *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35.

¶ 11    A parent is ultimately responsible for using the services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). A juvenile court may consider a parent's unwillingness to participate in treatment as a factor in determining whether a

department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 12 Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination that a department made reasonable efforts to rehabilitate the parent. *Id.*

## C. Analysis

¶ 13 The juvenile court found, with record support, that the Division made reasonable efforts to provide rehabilitative services to mother. Specifically, the caseworker testified that, when the case was opened, she referred mother for a substance abuse intake and evaluation at Creative Treatment Options (CTO), and that the referral was still open at the time of the termination hearing. CTO attempted to contact mother on numerous occasions throughout the proceedings, but mother never set up the intake or completed the evaluation. The caseworker also discussed inpatient treatment and sober living options with mother, but mother said she was unwilling to "be in a structured environment." The record indicates

5

that the Division set up random urinalysis (UA) testing, but mother never provided any UAs. The Division set up supervised family time, initially requiring professional supervision but eventually allowing kin to supervise. Even so, mother only saw the child eight times throughout the year-long proceedings. The caseworker also referred mother to CTO for a mental health evaluation, but mother never scheduled the appointment. And although the caseworker referred mother to the Public Nurse Collaboration Program, mother declined the services they offered to her.

¶ 14 We acknowledge that, unfortunately, mother was assaulted three months after this case was opened. As a result, she spent approximately three weeks in a hospital and another six weeks in a long-term care facility. But we are not persuaded by mother's argument that the Division failed to meet its reasonable efforts burden because it did not provide appropriate services while she was in long-term care or accommodations for her injuries.

¶ 15 First, the record indicates that the caseworker visited mother at the long-term care facility and discussed treatment options. Second, the Division coordinated kin-supervised family time while mother was in the long-term care facility, and the child visited her

there on at least five occasions. Third, the caseworker testified that although CTO typically requires an intake to be in-person, the caseworker contacted CTO and requested an exception for mother because she was in long-term care. CTO agreed to allow mother to do her intake over the phone, and the caseworker provided mother with the information she needed to set up the appointment.

¶ 16   We reject mother's argument that the Division failed to meet its reasonable efforts burden because the caseworker did not arrange for mother to do her UAs at the hospital or long-term care facility during the time she was there. When mother was at the long-term care facility, her counsel told the court that she "obviously" could not do UAs until she was discharged. In its ruling on the termination motion, the juvenile court gave mother "some leeway" for her missed UAs during the time she was in the hospital and long-term care facility. And even excluding the nine weeks that mother was in the hospital and long-term care facility, the record indicates that the Division set up approximately ten months of sobriety monitoring for her. Nonetheless, mother never provided any UAs. *See A.V.,* ¶ 12 (a parent's unwillingness to participate in services can be considered in determining whether a department

made reasonable efforts).  Thus, we are not convinced that the caseworker's failure to attempt to arrange UAs at the hospital or long-term care facility would have had any impact on the court's determination of whether the Division met its reasonable efforts burden or, in general, the outcome of the case.  *See* C.A.R. 35(c).

¶ 17    We also reject mother's argument that the caseworker's failure to thoroughly discuss mother's injuries with the medical providers or request an evaluation from the long-term care facility constituted a lack of "diligence and care" in determining what services mother needed.  Although her position is somewhat unclear, mother seems to argue that if the caseworker had better understood mother's injuries, then the Division could have provided better services.  But mother does not identify what additional services were necessary to rehabilitate her.

¶ 18    To the extent mother asserts that the Division should have facilitated a brain injury evaluation to assess what additional services were necessary, the record indicates that the caseworker attempted to provide such an evaluation when mother requested it.  Specifically, the caseworker testified that mother's counsel requested a brain injury evaluation approximately five months after

mother's discharge from long-term care, which was about two months before the termination hearing. At that point, the caseworker updated the referral to CTO so that it included a mental health evaluation. She confirmed that the mental health evaluation would include a brain injury assessment and that CTO would refer mother to the Colorado Brain Injury Alliance if the assessment indicated that mother needed such a referral. Moreover, the caseworker referred mother to the Public Nurse Collaboration Program "to discuss care coordination and offer additional referrals if needed." The Division also held a family engagement meeting to discuss different treatment options for mother, and the public nurse attended that meeting, but mother did not. Thereafter, the caseworker referred mother to a disability advocate at Jefferson County Human Services. But mother did not follow up with any of these referrals, and she specifically declined the services offered by the public nurse.

¶ 19    Based on the foregoing, we do not perceive any error in the juvenile court's determination that the Division made reasonable efforts to rehabilitate mother and reunite her with the child.

### III.  Less Drastic Alternatives

¶ 20    Mother contends that the juvenile court erred by determining that there were no less drastic alternatives to termination.  She argues that, based on the Division's failure to make reasonable efforts to provide appropriate services, the court should have found that giving mother more time to work on her treatment plan was a less drastic alternative to termination.  But this claim is predicated on the argument that the Division failed to make reasonable efforts, and we have rejected that argument.  Thus, mother's claim fails.

### IV.  Disposition

¶ 21    The judgment is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.