23CA1884 Peo in Interest of CMW 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1884
El Paso County District Court No. 22JV53
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of C.M.W., a Child,

and Concerning C.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GRAHAM*
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     C.B. (mother) appeals the judgment terminating her parent-child legal relationship with C.M.W. (the child).  We affirm.

## I.     Background

¶ 2     The El Paso County Department of Human Services filed a petition in dependency and neglect based on concerns about the parents' substance use after drug paraphernalia was found in the home during a parole officer visit.  Mother admitted to the allegations in the petition, and the juvenile court adjudicated the child dependent and neglected.

¶ 3     The court then held a dispositional hearing and adopted a treatment plan for mother.  It required mother to, among other things, (1) graduate from drug treatment court; (2) maintain a relationship with professionals on the case; (3) obtain and maintain sobriety; and (4) maintain regular contact with the caseworker.  As part of mother's treatment plan, she entered the Family Treatment Drug Court Program.

¶ 4     Mother was unsuccessfully discharged from the drug treatment program after she continued to test positive for illegal substances.  Her treatment plan was modified to remove the

1

requirement that she graduate from drug treatment court, and the case continued.

¶ 5    The Department moved to terminate parental rights approximately thirteen months after filing the petition. Following a two-day evidentiary hearing, the court granted the motion and terminated mother's parental rights. Mother appealed. In August 2024, we remanded the case to the juvenile court for the limited purpose of ensuring compliance with the provisions of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963; *see* § 19-1-126, C.R.S. 2024. The remand order directed the court to ensure the Department "exercised due diligence" regarding father's report of possible Mohican heritage to assist the court in determining whether there was "reason to know" that the child was an Indian child. *See* 25 U.S.C. §§ 1901-1963; § 19-1-126(3).

¶ 6    On remand, the Department sent appropriate notices to the tribes with whom the child may have had affiliation. Based on the tribes' lack of timely responses, the juvenile court determined that the child is not an Indian child. No party further challenges that finding in their supplemental briefs. Based upon this additional record, we conclude that the provisions of ICWA have now been

complied with and that this child is not an Indian child as defined under ICWA.

## II.    Reasonable Efforts

¶ 7    Mother's sole contention on appeal is that the juvenile court erred by finding the Department made reasonable efforts to rehabilitate her and reunite her with the child.  We discern no error.

### A.    Standard of Review

¶ 8    Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the court's factual findings for clear error but review de novo its legal determination based on those findings as to whether the department satisfied its reasonable efforts obligation.  *Id.*  The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are matters within the court's discretion.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

### B.    Applicable Law

¶ 9    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated

dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 10    A department of human services must make reasonable efforts to rehabilitate parents and reunite families before a court may terminate parental rights pursuant to section 19-3-604(1)(c). *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" for children who are in an out-of-home placement. § 19-1-103(114), C.R.S. 2024. Appropriate services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 11    Among those services required under section 19-3-208 are screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b).

¶ 12    In deciding whether a department has satisfied its reasonable efforts obligation, the juvenile court should consider whether the provided services were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). The parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

III.    Reasonable Efforts After Mother's Relapse

¶ 13    Mother argues the Department failed to provide reasonable efforts following her relapse and discharge from the Family Treatment Drug Court Program. She specifically argues that the Department's efforts were lacking in three areas: (1) referrals for substance abuse treatment; (2) substance abuse monitoring; and (3) caseworker contact with mother. We disagree.

## A. Referrals

¶ 14    Mother asserts that after she was discharged from drug treatment court the Department failed to provide any additional referrals despite her requests.

¶ 15    The juvenile court found the Department made reasonable efforts and specifically found that it tried to assist mother with community resources, made numerous referrals, and attempted to find inpatient facilities after mother reported she wanted to attend a second inpatient program.  Because the record supports the court's findings, we reject mother's arguments.

¶ 16    The record shows that the Department provided multiple referrals to three different substance abuse treatment providers, but mother did not successfully engage in any treatment, including with an additional provider of her choice.

¶ 17    The caseworker testified mother was referred to Recovery Unlimited shortly after the petition was filed.  Mother did not want to participate in an inpatient program, so she was discharged from Recovery Unlimited.  She was next referred to Rocky Mountain Behavioral Health, where inpatient treatment was also recommended.  Mother successfully completed inpatient treatment

but following her discharge, she reported she did not want to continue with services at Rocky Mountain Behavioral Health and was released from the program. Shortly after this, mother reported she relapsed and was discharged from drug treatment court.

¶ 18   The day after mother's case was removed from drug treatment court, a third referral was made for mother, again at Recovery Unlimited, where mother was later discharged for lack of engagement.

¶ 19   Following the second discharge from Recovery Unlimited, the caseworker referred her to Homeward Pikes Peak; however, mother declined to attend this program. Instead, mother found her own provider, A Turning Point, to complete substance abuse treatment. The caseworker testified that, while that location was not a provider the Department contracts with, the Department was willing to allow mother to complete treatment there and, therefore, did not put in a referral for another provider.

¶ 20   A Turning Point recommended enhanced outpatient treatment which included participating in two groups and individualized therapy. Though mother engaged in some classes, she missed twelve total classes and was taken off the individual therapist

calendar for lack of engagement three months before the termination hearing.

¶ 21    The caseworker also testified that shortly before the termination hearing, mother reported she wanted to attend inpatient treatment.  The caseworker provided a couple of resources and requested that mother reply with her preferred provider. Mother never replied.

¶ 22    Mother argues the caseworker failed to provide a referral for an additional inpatient treatment and instead, only provided a referral to a program from which mother had previously been terminated.  However, the record shows that mother's unwillingness to engage in treatment, not the Department's lack of efforts, prevented her from accessing additional substance abuse treatment services.  *See A.V.,* ¶ 12.

## B.    Substance Use Monitoring

¶ 23    Mother next contends that the Department failed to provide a referral for substance abuse monitoring and to contact the urinalysis (UA) testing provider.

¶ 24    The juvenile court found that the Department made reasonable efforts to provide substance abuse monitoring and that

mother was never able to show consistent periods of monitored sobriety. In particular, the court found there was no evidence of "monitored sobriety. Though she says she's been doing UAs. But priority here should be to show those UAs to us." The court additionally found it needed "months of UAs — clean UAs to show that [mother is] in a position to be able to have more time with [the child]; to be able to have more of a relationship with [the child], and we simply don't have that. We don't have the monitored sobriety." The record supports the court's findings.

¶ 25 The caseworker testified mother had a referral for UAs at Urban Labs, but she declined to complete UAs there and instead reported she was testing at a different facility. The caseworker did not have a release of information to allow the Department to see the results of those UAs. Moreover, the testing location allowed mother to choose her test dates.

¶ 26 The caseworker also testified that mother's UAs during her time in drug treatment court were "around 80 percent" positive for illegal substances. And mother admitted that she tested positive for illicit substances as recently as two-and-a-half months prior to the termination hearing.

¶ 27 Even if we assume the Department could have made additional efforts to refer mother for additional substance abuse monitoring, we cannot overlook the fact that mother never demonstrated extended periods of sobriety. *See J.C.R.*, 259 P.3d at 1285.

## C. Caseworker Contact

¶ 28 Mother finally argues that following the motion to terminate the "caseworker did not even bother to meet with [m]other outside of court and family engagement meetings."

¶ 29 The juvenile court found the caseworker "continued to try and contact" mother and called and texted to get her engaged and moving forward with her treatment plan. The record supports the court's findings.

¶ 30 Testimony shows the caseworker reached out to mother roughly once a month via texts and during staff meetings. The caseworker further testified that mother would text back when she needed something, and the caseworker would reply with a follow-up question or text and mother would then not reply. While mother testified about at least one instance where she was unable to get a reply from the Department, the juvenile court ultimately found the

caseworker's testimony more credible, and we will not disturb the court's credibility determinations upon review. *See A.J.L.*, 243 P.3d at 249-50.

## IV. Disposition

¶ 31 The judgment is affirmed.

JUDGE FREYRE and JUDGE SCHUTZ concur.