24CA1695 Peo in Interest of YJC 04-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1695
El Paso County District Court No. 23JV30096
Honorable Diana K. May, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Y.J.C., a Child,

and Concerning G.J.,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

Kenneth R. Hodges, County Attorney, Dolores Montoya-De Smidt, Staff County
Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Ainsley Bochniak, Office of Respondent Parents' Counsel, Denver Colorado, for
Appellant

¶ 1    In this dependency and neglect proceeding, G.J. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with Y.J.C. (the child). We affirm the judgment.

## I.    Background

¶ 2    The El Paso County Department of Human Services filed a petition in dependency and neglect regarding the newborn child. The petition alleged that mother and the child tested positive for methamphetamine at birth. The petition further alleged that mother tried to leave the hospital with the child against medical advice and that she had a criminal history related to substance abuse and an outstanding assault charge.

¶ 3    The juvenile court adjudicated the child dependent and neglected. The court adopted a treatment plan for mother requiring that she, among other things, (1) complete a substance abuse assessment and engage in recommended treatment; (2) submit regular random sobriety tests; (3) participate in life skills services; (4) consistently attend family time with the child; and (5) maintain stable employment and housing.

¶ 4     The child's guardian ad litem later moved to terminate mother's parental rights.  Following a hearing, the court terminated mother's parent-child legal relationship with the child.  Mother appeals, asserting that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and by finding no less drastic alternative to termination.

## II.     Reasonable Efforts

### A.     Applicable Law and Standard of Review

¶ 5     Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the department must make reasonable efforts to rehabilitate the parent and reunite the family.  §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  "Reasonable efforts" means the "exercise of diligence and care" as to a child who is in out-of-home placement.  § 19-1-103(114).  This standard is satisfied by providing services in accordance with section 19-3-208.  *Id.*; *see also People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo. App. 2006).  Among the services section 19-3-208 contemplates are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to

available public and private assistance resources; family time services; and placement services.  § 19-3-208(2)(b).

¶ 6     The services must be "appropriate to support the parent's treatment plan."  *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  Accordingly, the juvenile court should "consider[] the totality of the circumstances and account[] for all services and resources provided to a parent to ensure the completion of the entire treatment plan."  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

¶ 7     The parent is ultimately responsible for using the services to comply with the plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).  And the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 8     Whether a juvenile court properly terminated parental rights — including whether the department satisfied its obligation to make reasonable efforts — presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts.  *See People in Interest of A.M. v. T.M.*, 2021 CO 14,

¶ 15; *see also People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. The credibility of witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidentiary facts are within the juvenile court's discretion. *People in Interest of S.K.*, 2019 COA 36, ¶ 41. Thus, we will not set aside a juvenile court's factual findings if the record supports them. *Id.* But we review the juvenile court's legal conclusions de novo. *Id.*

## B.    Analysis

¶ 9    Mother asserts that the Department did not help her with transportation or pay her phone bill. The record does not support mother's assertions.

¶ 10    With respect to transportation, the caseworker testified that mother had "med rides" and bus passes available. Additionally, mother's visitation supervisor at the time of the termination hearing provided transportation to and from family time.

¶ 11    Nonetheless, mother asserts that the Department did not provide bus passes until ten months into the case. However, the record shows that mother had a car up until the time she requested bus passes and, accordingly, the Department was not required to provide transportation services throughout the entire proceeding.

*See* § 19-3-208(2)(d)(I) (requiring the department provide a parent with transportation to services "when other appropriate transportation is not available").

¶ 12    Mother also contends that the Department switched visitation centers several times during the proceeding, which caused even more trouble with transportation.  But the testimony shows that the change in family time providers was not due to the Department's lack of reasonable efforts but because of mother's lack of engagement and subsequent discharge from at least two family time providers, and, in one instance, because of safety concerns for the child presented by individuals mother chose to join her family time.

¶ 13    As for mother's telephone, the record shows that the juvenile court ordered the Department to pay mother's cell phone bill.  But nothing establishes that the Department failed to do so.  Indeed, mother consistently called in for court appearances, and at the termination hearing she testified that she had been able to secure a phone and that she "pretty much [has] everything" she needed to complete her treatment plan.

¶ 14    Mother also asserts that the Department made engaging in services more complicated by submitting referrals to three separate

providers even after her counsel asked that mother be allowed to engage in services at one facility. Because she provides no record support for this assertion, we will not address it. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1186 (Colo. App. 2011) ("When a party does not point us to where an issue was raised and resolved, he places the burden of searching records on us — a search we are not required to undertake.") (internal citation omitted).

¶ 15    Lastly, mother contends that with more time she would have become fit, though she does not tie this argument to the Department's purported lack of reasonable efforts. Indeed, she provides no legal analysis or factual support, other than her own testimony, to support this argument. Based on our own review of the record, the juvenile court did not err when it found mother was unlikely to become fit within a reasonable time. The caseworker testified as an expert and opined that mother could not become fit in a reasonable time and the court found, with record support, that mother had made no progress on her treatment plan.

¶ 16    In sum, the juvenile court did not err when it found the Department made reasonable efforts to rehabilitate mother and

reunify the family or that mother was unlikely to become fit in a reasonable time.

### III.   Less Drastic Alternatives

#### A.   Relevant Law

¶ 17     Implicit in the statutory criteria for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  When considering less drastic alternatives, the court must base its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3).

¶ 18     When deciding whether permanent placement with a relative is a viable less drastic alternative to termination, the court may consider various factors, including whether an ongoing relationship with the parent would be beneficial or detrimental to the child. *People in Interest of A.R.*, 2012 COA 195M, ¶ 38.  "[L]ong-term or permanent placement with a family member or foster family, short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or otherwise meet a child's needs."  *Id.* at ¶ 41.

¶ 19　　For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be in the child's best interest. *A.M.*, ¶ 27. If the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32.

¶ 20　　When the juvenile court considers the availability of a less drastic alternative and determines that termination of a parent's rights would be in the child's best interests, we are bound to affirm the court's decision if its findings have record support. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B.　Analysis

¶ 21　　The juvenile court found no less drastic alternative to termination. It found that the child's kinship placement was meeting all the child's needs and that mother refused to engage in treatment. The court noted that her last drug screen was eight months prior to the termination hearing. The record supports the juvenile court's findings.

¶ 22　　The caseworker testified that she believed it was in the child's best interest to terminate parental rights. She testified that mother

had not substantially engaged in substance use treatment — the reason the Department became involved with the family in the first place. Mother attended only a limited number of life skills sessions, never verified her address, and did not establish a steady, legal source of income. And, although the caseworker acknowledged that mother attended about seventy-five percent of scheduled family time, the visitation supervisors had concerns about mother falling asleep during visits and feeding the child developmentally inappropriate food.

¶ 23    Nonetheless, mother argues that because the child's kinship placement did not testify at the termination hearing, "the court did not have all the information necessary to determine whether a less drastic alternative, such as permanent placement through [a Relative Guardianship Assistance Program], would serve [the child's] best interests." But the caseworker testified that she had discussed the difference between termination and an allocation of parental responsibilities (APR) with the child's kinship placement. And she explained that one of the placement providers worked for the Department and fully understood the available options.

¶ 24    Moreover, while the court may consider whether a potential permanent placement prefers adoption over an APR, the primary consideration in eliminating less drastic alternatives is the child's physical, mental, and emotional conditions and needs. *See* § 19-3-604(3); *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29; *People in Interest of K.B.*, 2016 COA 21, ¶ 35. Here, taking those primary considerations into account, the court determined there were no less drastic alternatives available and that termination was in the child's best interests.

¶ 25    Mother also argues that an ongoing relationship was in the child's best interests because the caseworker "implied" as much when she testified that she believed the paternal relatives would continue to facilitate contact between the child, his siblings, and biological parents if they deemed it safe. Even if the caseworker's testimony could be construed in such a way, we must defer to the juvenile court's resolution of any factual disputes. *See In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo. App. 1995) ("The trial court as a finder of fact can believe all, part, or none of a witness' testimony, even if uncontroverted.").

¶ 26    Lastly, mother asserts that in its oral and written rulings the juvenile court did not discuss the child's best interests, his bond and attachment to mother and siblings, or make specific findings regarding the child's physical, mental, or emotional conditions and needs when determining that termination was in his best interests.

¶ 27    We perceive no error in the juvenile court's ruling.  The court's written ruling specifically found, by clear and convincing evidence, that the child's placement "meets all the child's needs, appreciates . . . everything about him, cultural needs and cultural background."  The court further found that termination was "in the child's best interest because [the kinship placement is] meeting the child's physical, emotional, and mental needs."  The court noted that mother had not engaged in her treatment plan, "demonstrated that she has no desire to change," and "chose to participate at an arm's length" instead of addressing outstanding warrants.  Thus, mother was "unable and unwilling to act in the child's best interest."  Given these findings, the court sufficiently addressed the child's best interests when deciding to terminate mother's parental rights.

## IV. Disposition

We affirm the judgment.

JUDGE HARRIS and JUDGE PAWAR concur.