24CA0755 Peo in Interest of MLD 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0755
Dolores County District Court No. 22JV1
Honorable William Young Furse, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.L.D., a Child,

and Concerning L.A.M.E. and L.J.D.,

Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Gomez and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Dennis R. Golbricht, County Attorney, Durango, Colorado, for Appellee

Beth Padilla, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant L.A.M.E.

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant L.J.D.

¶ 1 In this dependency and neglect action, L.J.D. (father) and L.A.M.E. (mother) appeal the judgment terminating their parent-child legal relationships with M.L.D. (the child). We affirm.

## I. Background

¶ 2 In June 2022, the Dolores County Department of Social Services (Department) filed a petition in dependency and neglect alleging that father was using and manufacturing illicit substances in the family home and around the child. Mother was incarcerated at the time the petition was filed.

¶ 3 The parents admitted the allegations in the petition and the juvenile court adjudicated the child dependent and neglected. The court then adopted treatment plans for the parents.

¶ 4 About eight months later, the court allowed the child to return home to father on a trial basis. A month later, the Department moved for, and the court granted, emergency removal of the child after father admitted to a relapse and safety plan violations. Mother was released from custody shortly thereafter.

¶ 5 Later, the guardian ad litem (GAL) moved to terminate the parents' parental rights. The juvenile court held a three-day

evidentiary hearing and, at the conclusion of the hearing, terminated the parent-child legal relationships.

## II. Statutory Criteria and Standard of Review

¶ 6 A juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.B.*, 2022 CO 55, ¶ 19.

¶ 7 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 8    However, we will not disturb the court's factual findings and conclusions when they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. The credibility of the witnesses as well as the sufficiency, probative value, and weight of the evidence, and the inferences and conclusions to be drawn from it are within the court's discretion. *A.M.*, ¶ 15.

### III.    Father's Arguments

### A.    Father's Disability

¶ 9    Father first asserts that the juvenile court violated his right to due process and the nondiscrimination provisions of federal and state law, including Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134. Specifically, he contends he had an ADA-qualifying disability — substance use disorder — and the court discriminated against him based on his disability when it found that his "chronic substance use and conduct when he . . . uses or relapses is unlikely to change within a reasonable amount of time." We decline to address father's argument because it was unpreserved.

¶ 10    We agree with the Department and the GAL that father never asserted in the juvenile court that he had a qualifying disability.

We decline to address father's assertion because a parent cannot raise noncompliance with the ADA for the first time on appeal. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 18; *see also People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[A]ppellate courts review only issues presented to and ruled on by the lower court.").

¶ 11 Nevertheless, father maintains that we should address his claim because the Department "was aware" of father's substance use disorder. However, the appropriate question is not whether the Department was aware, but whether the *court* was. Because father never sufficiently raised the ADA issue with the court, the court made no findings on the issue. Therefore, we decline to address father's unpreserved claim because we would have to make factual findings about whether father had a disability, which we cannot do. *See S.Z.S.*, ¶ 21 ("[B]ecause mother never raised the ADA issue, even by implication, either before or during the termination hearing, the juvenile court didn't make any specific findings about the applicability of the ADA for us to review."); *People in Interest of S.K.*, 2019 COA 36, ¶ 21 n.2 (noting that whether a parent is a qualified individual with a disability under the ADA requires a fact-specific determination that a juvenile court must resolve).

¶ 12     Regardless, father has not identified any specific nondiscrimination provision of a state or federal statute that the court violated or explained how noncompliance with that provision would constitute a cognizable claim in a dependency and neglect proceeding.

¶ 13     To the extent that father argues, in general, that his due process rights were violated, we disagree. Generally, "due process requires the state to provide fundamentally fair procedures to a parent facing termination," which include (1) notice of the hearing, (2) advice of counsel, and (3) the opportunity to be heard and defend. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 27. While father asserts he was "not given a meaningful opportunity to defend himself," the record indicates otherwise. Father had notice of the termination hearing; he had the advice of counsel; and, through counsel during the hearing, he was able to question and present witnesses — nearly all of whom addressed questions related to father's substance use — and mount a defense. Indeed, father testified during the proceedings and addressed questions related to his sobriety.

## B.  Reasonable Time

¶ 14    Father contends that the juvenile court erred by finding that he could not become fit within a reasonable time.  We disagree.

### 1.  Relevant Law

¶ 15    "An unfit parent is one whose conduct or condition renders [the parent] unable or unwilling to give a child reasonable parental care."  *S.Z.S.*, ¶ 23.  At a minimum, reasonable parental care requires that a parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 9.

¶ 16    Before a court can terminate the parent-child relationship, there must be clear and convincing evidence that the parent cannot become fit within a reasonable time.  § 19-3-604(1)(c)(III).

¶ 17    A reasonable time is not an indefinite time but must be considered based on the physical, mental, and emotional conditions and needs of the child.  *S.Z.S.*, ¶ 25.  When determining whether a parent may become fit within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition."  *Id.* at ¶ 24.  Partial or even

substantial compliance with a treatment plan does not necessarily render a parent fit.  *K.B.*, ¶ 26.

¶ 18    If a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply.  *See S.Z.S.*, ¶ 24.  When, as here, a child is under six years old, the court must consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible.  §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

## 2.    Analysis

¶ 19    Father argues the juvenile court erred by finding that he could not become fit within a reasonable time because the court improperly considered his disability, as described above.  We reject this argument for the reasons described above.  He also asserts that he was in substantial compliance with his treatment plan and that there was no clear and convincing evidence that he was unfit or unlikely to become fit within a reasonable time.

¶ 20    The juvenile court found that while father consistently worked on his sobriety, he continued to test positive for illicit substances, was unable to maintain the child's safety during a return-home

trial, and had unresolved legal issues. The court further found that father had failed to substantially comply with his treatment plan and that he was unfit. Considering the EPP provisions, the court determined that he could not become fit within a reasonable time.

¶ 21 The record supports the court's findings. Father's treatment plan, in relevant part, required him to (1) establish and maintain sobriety through substance use treatment and sobriety monitoring without missing any testing; (2) provide a home environment that supports the safety and well-being of his child; and (3) resolve any outstanding court issues.

¶ 22 As father contends, there was testimony that he was positively engaged in substance use treatment and his UA tests were clean of any substances that could not be explained by his prescribed medication. However, father frequently missed his UAs and tested positive for illicit substances in hair follicle testing.

¶ 23 The caseworker testified that when the child was initially removed from father's home, she tested positive for amphetamines, methamphetamines, and fentanyl. When the child was removed from father's home a second time, she tested positive for marijuana. Father also admitted that he had relapsed around the time the child

8

was returned home, had driven with the child in the car, and had allowed the child to be watched by an unapproved caregiver, all in violation of the safety plan. And father had unresolved warrants from out of state that would require jail time.

¶ 24 In sum, the court considered evidence of father's compliance with his treatment plan and still concluded he was unfit and unlikely to become fit within a reasonable time. Because the record supports the court's findings, we may not reweigh the evidence or substitute our judgment for the juvenile court's. *See S.Z.S.*, ¶ 29.

## IV. Mother's Arguments

### A. Appropriate Treatment Plan

¶ 25 Mother contends that the juvenile court erred by finding that her treatment plan was appropriate because it did not include provisions for child parent psychotherapy (CPP). We disagree.

#### 1. Relevant Law

¶ 26 Except in some limited circumstances not applicable here, a juvenile court must adopt an appropriate treatment plan for a parent following a dispositional hearing. § 19-3-508(1)(e)(I), C.R.S. 2024; *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 15. The treatment plan seeks to preserve the parent-child legal relationship

9

by assisting the parent in overcoming the problems that required intervention with the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25. Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12), C.R.S. 2024; *People in Interest of K.B.*, 2016 COA 21, ¶ 13.

¶ 27 We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan. *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). The court may modify a treatment plan when new information or changed circumstances render a previously approved treatment plan no longer appropriate. *Z.P.S.*, ¶¶ 26-27. The fact that a treatment plan isn't ultimately successful doesn't mean that it was inappropriate when the court approved it. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

¶ 28 A juvenile court has discretion to formulate a treatment plan that relates to the child's needs and is reasonably calculated to

render the parent fit within a reasonable time. *People in Interest of M.W.*, 2022 COA 72, ¶ 32. A juvenile court abuses its discretion when its actions are manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Id.* at ¶ 12.

### 2. Analysis

¶ 29 The juvenile court adopted an initial treatment plan for mother, without objection, requiring her to (1) complete her criminal sentence and abide by all rules; (2) provide a home environment that supported the safety and well-being of the child post-incarceration; and (3) attend all scheduled supervised visits with the child upon release from incarceration.

¶ 30 Once mother was released from custody, her treatment plan was amended with her agreement to include provisions related to mental health treatment, maintaining a drug free environment, and obtaining stable housing. Later, mother moved for the treatment plan to be modified and, following a contested hearing, the court denied her request.

¶ 31 In the termination judgment, the court found that the treatment plans were created with mother's involvement and that they were appropriate.

¶ 32 The record supports the court's findings. True, mother's expert testified the Department should have offered child-parent psychotherapy. However, the expert also testified it would not be appropriate to start child-parent psychotherapy when a parent was using substances. Mother self-reported using methamphetamines in September 2023 and tested positive for substances in December 2023, three months before the termination hearing.

¶ 33 In any event, the juvenile court considered and rejected adding child-parent psychotherapy to mother's treatment plan during the contested hearing. The court found that child-parent psychotherapy would not address the issues that initially brought the family before the court. *See K.B.*, ¶ 13.

¶ 34 For these reasons, we discern no error in the juvenile court's determination that mother's treatment plan was appropriate.

## B.     Reasonable Efforts

¶ 35     Mother asserts that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the child.  We disagree.

### 1.     Relevant Law

¶ 36     Before a juvenile court may find a parent unfit, the court must consider whether the county department of human services made reasonable efforts to rehabilitate parents and reunite families. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 37     Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provisions of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; and family time and placement services.  § 19-3-208(2)(b).  If funding is available, a department must also provide substance abuse treatment services.  § 19-3-208(2)(d)(V).

13

¶ 38 A juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 39 Whether a department of human services satisfied its obligation to provide reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

## 2. Analysis

¶ 40 The juvenile court found, with record support, that the Department provided mother with several services, which included payments for mother to attend her monthly in-person family time and assistance with housing and application fees. The Department also remained in regular contact with mother. Thus, the court determined that reasonable efforts were made to rehabilitate mother, but those efforts did not result in mother becoming fit.

¶ 41 First, we reject mother's arguments that the Department failed to provide reasonable efforts when they did not provide in-person family time visits while mother was incarcerated, and when they failed to provide sufficient in-person and virtual visits following her release. It does appear that the Department provided all the family time ordered by the court. However, the record shows that the Department paid for mother's bus tickets, hotels, and gas cards to allow her to attend her monthly in-person family time with the child. Notably, mother never requested in-person family time while she was incarcerated, nor did she request an increase in family time (virtually or in person) following her release.

¶ 42    The record also does not support mother's assertions that the Department failed to perform a home visit or assist with housing resources and employment. Rather, the caseworker testified a home visit did not occur because mother declined to complete the Interstate Compact on the Placement of Children (ICPC) process due to the caseworker's ongoing concerns about the home and her potential eviction from the home. The Department also offered to provide mother financial assistance for the application fees, move-in fees, and rental payments. They gave mother various lists of housing options. And while mother never requested assistance with employment, the Department provided her with information on local job opportunities and contacted a local agency that gave mother employment information.

¶ 43    We also disagree with mother's arguments that the Department did not hold family engagement meetings or meet with mother's parole officer. Mother cites to no legal authority, and we are not aware of any, that would require the Department to make such efforts. Regardless, the record shows the Department maintained regular communication with mother and contacted mother's parole officer.

¶ 44  True, the Department did not assist mother with mental health treatment. However, she was required to engage in mental health treatment through her parole, had mental health services set up before being paroled, and was not attending her mental health appointments regularly at the time of the termination hearing.

¶ 45  The Department also did not provide referrals for mother's substance abuse treatment. However, mother repeatedly denied she had any substance use concerns and substance abuse treatment was not initially a part of her treatment plan. Later, when the Department requested mother submit hair follicle or cuticle testing, she repeatedly refused and argued sobriety monitoring was covered by her parole. About three months before the termination hearing, mother was ordered to undergo a substance use evaluation and complete urinalysis (UA) testing. The evaluation recommended she attend inpatient treatment and her UA was positive for illicit substances. The Department encouraged mother to attend inpatient treatment and inquired about services for her in her local area. But mother did not complete the intake process for inpatient treatment. She also attended one outpatient session but failed to engage further.

¶ 46    Thus, considering the totality of the circumstances, we conclude the juvenile court did not err in finding the Department provided reasonable efforts.  *See My.K.M.*, ¶ 33.

V.    Disposition

¶ 47    The judgment is affirmed.

JUDGE GOMEZ and JUDGE LUM concur.