24CA1961 Peo in Interest of AM 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1961
Arapahoe County District Court No. 20JV182
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.M., Jr., a Child,

and Concerning D.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Ronald A. Carl, County Attorney, Kiley Schaumleffel, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    D.S. (mother) appeals the judgment terminating her parent-child legal relationship with A.M., Jr. (the child). We affirm.

## I.    Background

¶ 2    The Arapahoe County Department of Human Services (the Department) received referrals expressing concerns about mother's substance use, parole violations, and neglect of the child. The Department filed a petition in dependency or neglect, and the juvenile court adjudicated the child dependent and neglected. The one-month-old child was placed in foster care where he remained for the pendency of the case.

¶ 3    One year after the filing of the petition, the juvenile court terminated mother's legal relationship with the child. Mother appealed, and a division of this court remanded the case for the limited purpose of considering a C.R.C.P. 60(b) motion. The juvenile court granted the Rule 60(b) motion and vacated the termination order.

¶ 4    The Department filed a subsequent motion to terminate mother's parental rights, which the juvenile court denied for lack of reasonable efforts. The juvenile court then adopted an amended treatment plan for mother that required her to, among other things,

(1) develop a positive working relationship with the Department; (2) develop skills to maintain a sober lifestyle; (3) address any mental health issues; (4) engage in family therapeutic interventions to strengthen the parent-child relationship; and (5) demonstrate cognitive, emotional, and behavioral capacities necessary to parent the child.

¶ 5    Several months later, the Department again moved to terminate mother's parental rights. After the hearing, the juvenile court terminated mother's parental rights.

## II. Reasonable Efforts

¶ 6    Mother argues the juvenile court erred by finding that the Department engaged in reasonable efforts to reunite her with the child. We discern no basis for reversal.

### A. Applicable Law and Standard of Review

¶ 7    In deciding whether to terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunite them with the child. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means the "exercise of diligence and

care" to reunify parents with their children. § 19-1-103(114). Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 8      Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b).

¶ 9      In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  But the parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in

treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 10　　Whether the Department satisfied the obligation to make reasonable efforts to rehabilitate the parent and reunify the family is a mixed question of law and fact. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

### B.　Analysis

¶ 11　　On appeal, mother does not assert that the Department failed to provide any of the services listed in section 19-3-208 that were necessary for her to comply with her treatment plan and become a fit parent. Rather, she contends that the Department failed to conduct an appropriately diligent search for individuals who could serve as a permanent placement option.

¶ 12　　Yet, for the purposes of a termination proceeding, the Department does not have a duty to investigate relatives to satisfy its reasonable efforts obligation because "those aren't services aimed at rehabilitating" the parent. *People in Interest of B.H.*, 2021

CO 39, ¶ 79 ("[S]ection 19-3-604(2)(h) doesn't ask the trial court to assess whether the Department . . . explored enough placement options."). Moreover, to the extent mother relies on a regulation that addresses family and search engagement when a child is to be placed out of the home, Dep't of Hum. Servs. Rule 7.304.52, 12 Code Colo. Regs. 2509-4, we conclude that it is section 19-3-208, not the regulation, that specifies the services required to fulfill the Department's reasonable efforts obligations. *See S.N-V.*, 300 P.3d at 915.

¶ 13    Regardless, the record shows that the Department considered eight possible placement options. However, only one individual, mother's cousin, expressed a willingness to be considered for placement. After speaking to the cousin, the caseworker determined she was not a viable placement option due to her prior criminal history. No other family member contacted the caseworker after this initial search and mother did not provide any additional names to explore. Therefore, there was no evidence of a change in circumstances of any of the previously explored placement options. To be sure, the Department could have followed up with the potential placement options closer to the termination

hearing. However, the Department was not required to do so to comply with its reasonable efforts obligation. Accordingly, we discern no error on these grounds.

### III. Less Drastic Alternatives

¶ 14 We also discern no error if we construe mother's argument as an assertion that the juvenile court erred by finding that there were no less drastic alternatives to termination. *See B.H.*, ¶ 79.

### A. Applicable Law

¶ 15 Implicit in the statutory scheme for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives to termination. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). When considering less drastic alternatives, the court gives primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). A juvenile court may consider and weigh various factors in determining the viability of a less drastic alternative, including whether (1) a less drastic alternative is available, *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007), and (2) the alternative option provides the child with adequate permanency or meets the

child's needs, *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

¶ 16     For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *B.H.*, ¶ 80.

### B.     Analysis

¶ 17     The record amply supports the juvenile court's finding that there were no less drastic alternatives to termination that would meet the physical, emotional, and mental health needs of the child.

¶ 18     At the time of the termination hearing, the case had been open for four years. Based on the child's age and mother's level of engagement with her treatment plan, the caseworker opined that it was in the child's best interests to find a permanent placement. The child last saw mother three-and-a-half years before the

termination hearing and was comfortable and well-established in the foster home, the only home he had ever known. The caseworker opined that (1) the level of mother's engagement was not appropriate for an allocation of parental responsibilities (APR); (2) an APR was not appropriate for the child; and (3) termination was in the child's best interests. Thus, even if the Department had engaged in further efforts to find a relative placement, or a placement open to an APR, that wouldn't change the less drastic alternatives analysis.

¶ 19 Because the juvenile court's finding that there was no less drastic alternative to termination that served the child's best interest has record support, we will not disturb it.

## IV. Disposition

¶ 20 The judgment is affirmed.

JUDGE FOX and JUDGE GOMEZ concur.