25CA1142 Peo in Interest of PRA 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1142
Montrose County District Court No. 23JV39
Honorable D. Cory Jackson, Judge

The People of the State of Colorado,

Appellee,

In the Interest of P.R.A., P.A.A., and B.C.A., Children,

and Concerning A.A.A.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Yun and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

Julie R. Andress, County Attorney, Ryan J. Dunn, Assistant County Attorney, Montrose, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem

James West, Office of Respondent Parents' Counsel, Longmont, Colorado, for Appellant

¶ 1　　In this dependency or neglect proceeding, A.A.A. (father) appeals the judgment terminating his parent-child legal relationships with P.R.A., P.A.R., and B.C.A. (the children). Specifically, he challenges the juvenile court's determinations that (1) the Montrose County Department of Human Services made reasonable efforts to rehabilitate him and reunite his family while he was incarcerated, and (2) no less drastic alternative to termination was available.  We affirm.

## I.　　Background

¶ 2　　The Garfield County Department of Human Services (Garfield Department) filed a petition in dependency or neglect alleging that the children lacked proper parental care.

¶ 3　　Father admitted the allegations in the petition, and the juvenile court adjudicated the children dependent or neglected.  The court then adopted a treatment plan for father.

¶ 4　　Roughly ten months later, the court granted the Garfield Department's unopposed request to change venue to Montrose County.

¶ 5    The Montrose County Department of Human Services (Department) developed and submitted an amended treatment plan to the juvenile court, which the court adopted shortly thereafter.

¶ 6    Later, the Department moved to terminate father's parental rights. Following an evidentiary hearing, the court granted the motion.

## II.    Reasonable Efforts

### A.    Preservation

¶ 7    The Department and guardian ad litem assert that father did not preserve his reasonable efforts argument because he failed to raise it prior to the termination hearing. We note that divisions of this court are split regarding whether raising a lack of reasonable efforts argument for the first time in closing argument properly preserves the issue for appeal. *Compare People in Interest of D.P.*, 160 P.3d 351, 354-55 (Colo. App. 2007) (a parent waives any perceived deficiency in reasonable efforts not raised before the termination hearing), *with People in Interest of S.N-V.*, 300 P.3d 911, 913-18 (Colo. App. 2011) (an appellate court may consider a perceived deficiency in reasonable efforts not raised until the termination hearing). However, we need not determine whether

father preserved his argument, or was required to, because even assuming he did, we discern no basis for reversal.

## B. Applicable Law and Standard of Review

¶ 8 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025. As pertinent here, to determine whether a parent is unfit, the juvenile court must consider whether "[r]easonable efforts by child-caring agencies . . . have been unable to rehabilitate the parent." § 19-3-604(2)(h); *S.N-V.*, 300 P.3d at 915. Thus, the determination that the department made reasonable efforts is implicit in a court's determination that a parent is unfit.

¶ 9 "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2025. Services provided in accordance with section 19-3-

208, C.R.S. 2025, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 10    Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. Therefore, we review the juvenile court's factual findings for clear error but review de novo its legal determination as to whether the department satisfied its reasonable efforts obligation. *Id.* In reviewing whether the department's efforts satisfied its obligation, we will not reverse if the record amply demonstrates that the department made reasonable efforts to rehabilitate a parent and reunite them with their family. *Id.* at ¶ 15.

## C.    Additional Background

¶ 11    Roughly seven months after the case began, father was arrested. He remained incarcerated for about six months before he was released. He remained out of custody, and his whereabouts were unknown, for the next three months. Father was then reincarcerated and he remained in custody for the remainder of the case.

### D.    Analysis

¶ 12    Father argues that, during his incarceration, the Department's efforts "appear to have been limited to facilitating visitation," and asserts that the Department failed to otherwise investigate or offer services to him.

¶ 13    The juvenile court found that the Department made reasonable efforts.  It also found that father failed to engage in available services and "elected not to participate in most" family time visits.

¶ 14    The record establishes the following:

- The caseworker attempted to keep in contact with father while he was incarcerated, but he largely ignored her attempts to communicate with him.

- When the caseworker was able to talk to father, she explained his treatment plan, what services were available to him in custody, and how to engage with them.  At times, father reported he was participating in services, but he never provided verification for completion of any treatment.

- Father's participation in family time was sparse. At one point, he used Department-issued funding for family time to play video games rather than attend family time. At another, he reportedly claimed he "did not care" about visits with the children.

¶ 15    While father was out of custody, he did not participate in any services, attend family time with the children, or remain in contact with the Department.

¶ 16    In sum, the record indicates that the Department attempted to connect father with services and provide him with family time throughout the case, but he did not engage or cooperate. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12 (a court may consider a parent's unwillingness to participate in treatment as a factor when considering reasonable efforts). Based on the foregoing, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate father.

### III.    Less Drastic Alternatives

#### A.    Applicable Law and Standard of Review

¶ 17    The consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. *People in Interest*

*of A.M. v. T.M.*, 2021 CO 14, ¶ 40.  In considering less drastic alternatives, a juvenile court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29.  The court may also consider, among other things, whether the alternative placement option favors adoption rather than an allocation of parental rights (APR).  *S.N.V.*, 300 P.3d at 920.

¶ 18    For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternatives must be the "best" option for the child.  *A.M.*, ¶ 27. Long-term or permanent placement with a family member, short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or otherwise meet a child's needs.  *People in Interest of A.R.*, 2012 COA 195M, ¶ 41.  If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination.  *A.M.*, ¶ 32.

¶ 19    "We review a juvenile court's less drastic alternatives findings for clear error."  *People in Interest of E.W.*, 2022 COA 12, ¶ 34.

Accordingly, when a juvenile court considers a less drastic alternative but instead finds that termination is in the child's best interests, we are bound to affirm the court's decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B.    Analysis

¶ 20    Father argues that the juvenile court rejected an APR as a less drastic alternative to termination "based on generalized [caseworker] testimony that APRs are inherently unstable." We discern no basis for reversal.

¶ 21    The juvenile court considered less drastic alternatives to termination but ultimately concluded that termination was in the children's best interests. The record supports the court's findings.

¶ 22    The caseworker testified that the kinship placement was not willing to do an APR. *See S.N.V.*, 300 P.3d at 920. The caseworker further opined that she believed an APR would leave the children "somewhat in limbo," while adoption provided more certainty for the children's future. The caseworker noted the children's need for stability and permanency given their history of repeated placement disruption throughout the life of the case. *See A.R.*, ¶ 41.

¶ 23    Still, father asserts that the juvenile court erred when it admitted and later relied upon possible hearsay testimony from the caseworker. But father did not object to the statement he now challenges on appeal. Thus, he waived any challenge to it, and we decline to review it further on appeal. *People in Interest of M.B.*, 2020 COA 13, ¶ 14.

¶ 24    Accordingly, because the record supports the court's less drastic alternatives finding, we are bound to affirm. *See B.H.*, ¶ 80.

IV.    Disposition

¶ 25    The judgment is affirmed.

JUDGE YUN and JUDGE SCHOCK concur.